**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARIA L. RUBIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4021 |
| | § | |
| DAIMLERCHRYSLER CORP. *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Plaintiff, Maria L. Rubin, filed suit in Texas state court against Daimler Chrysler Corp., alleging that she was injured when a 1999 Jeep Grand Cherokee driven by her daughter moved backwards unexpectedly because although the gear shift appeared to be in the "park" position, it was in "reverse." Rubin also sued the in-state sellers of the Jeep, Shannon Automotive, Ltd. d/b/a Crown Jeep Eagle Chrysler Plymouth ("Crown Jeep") and UAG Texas II, Inc. ("UAG").   Chrysler removed on the basis of diversity jurisdiction, alleging improper joinder of the in-state defendants. 28 U.S.C. §§ 1332, 1441(b).  Chrysler based its removal on a Texas statute that protects nonmanufacturing sellers from product liability suits.  (Docket Entry No. 17).  Rubin has moved to remand, asserting that she adequately pleaded exceptions to that statute.  (Docket Entry No. 22).

Based on the pleadings, the motions and responses, the parties' arguments and submissions, and the applicable law, this court denies Rubin's motion to remand.  The reasons are stated below.

## I.      Removal Jurisdiction and Improper Joinder

If federal jurisdiction is based on diversity, the action is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought."  28 U.S.C. § 1441(b).  Defendants assert that removal jurisdiction is present under 28 U.S.C. § 1441(b) because diversity exists if the in-state defendants' citizenship is disregarded.  Chrysler is a Delaware corporation with its principal place of business in Michigan.  Crown Jeep is a Texas partnership.  UAG, a Delaware corporation, is the managing partner of the partnership.  (Docket Entry No. 10, Ex. 1).  Rubin is a Texas oilman.  The citizenship of an improperly joined defendant is irrelevant to diversity jurisdiction.

To establish improper joinder, the party seeking removal must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003).  Under the second prong, the standard is whether the defendant has demonstrated that there is no reasonable basis to predict that the plaintiff might be able to recover against the in-state defendant.  "[A] removing defendant [need not] demonstrate an absence of *any possibility* of recovery in state court, . . . the defendant must demonstrate only that there is no *reasonable basis* for predicting that the plaintiff will recover in state court."  *Gray ex rel. Rudd v. Beverly Enterprises-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir. 2004)(emphasis in original).  A "mere theoretical possibility of recovery under local law" will not preclude a finding of improper joinder.  *See Badon v. RJR Nabisco, Inc.*, 236 F.3d

282, 286 n. 4. (5th Cir.2000); *Ross v. Citifinancial, Inc*., 344 F.3d 458, 462 (5th Cir.2003).

The Fifth Circuit recently clarified the procedure for determining whether a removing party has shown that no reasonable basis for recovery against the in-state defendant exists. In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004)(en banc), *cert. denied*, 125 S.Ct. 1825 (2005), the court explained that two methods are available to a district court deciding a motion to remand based on improper joinder.

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. . . . [W]e caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.

*Id.* at 573-74. If, after examining the pleadings, the district court determines that it is appropriate to pierce the pleadings and conduct a summary inquiry, discovery into jurisdictional facts might be appropriate. The *Smallwood* court emphasized that only limited discovery, on a showing of necessity, restrained by a tight "judicial tether," is appropriate. *Id.*

In determining whether the plaintiff has a reasonable basis for recovery on at least one claim under state law, the district court is limited to the causes of action and allegations asserted in the complaint. The removing party may not rely on causes of action or new

theories of recovery not alleged in the latest petition that was on file in the state court when the case was removed.  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999); *Alonso ex. rel. Estate of Cagle v. Maytag Corp.,* 356 F. Supp.2d 757, 761 (S.D.Tex. 2005)(noting that although a court may consider post-removal evidence, it may not consider new theories or causes of action).

The district court must resolve all factual disputes and ambiguities in state law in favor of the plaintiff.  *Travis*, 326 F.3d at 649; *McKee v. Kan. City S. Ry. Co*., 358 F.3d 329, 333 (5th Cir.2004).  If the record reveals a reasonable basis of recovery on one cause of action, a court must remand the entire suit to state court. *Gray,* 390 F.3d at 412 (presence of unavailing claims does not defeat remand); *Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638 (5th Cir.2004).

## II.    The Petition and the Jurisdictional Discovery

In her original state court petition, Rubin asserted what she described as "Facts Common to all Causes of Action."  In this section of the petition, Rubin alleged that on September 6, 2002, Rubin and her daughter, Maria Roberts, were preparing to leave home. Roberts started the engine of the 1999 Jeep Grand Cherokee she had purchased in July 1999 to back out of her parking space.  She tried to release the parking brake, without success. Rubin was standing beside the car when "the emergency brake finally released on its own. Although the floor shifter transmission control indicated the transmission was in the 'Park' position, the car lunged backward and unexpectedly traveled several feet.  The open door of the vehicle struck Rubin . . ." and caused her severe injury.  Rubin alleged that Chrysler

"designed and manufactured" the vehicle; that all three defendants "marketed" the vehicle; and that Crown Jeep and UAG "marketed and serviced" the vehicle." (Docket Entry No. 7, Ex. 1, p. 3).

Rubin specifically alleged that when the vehicle was sold to Maria Roberts, defendants Crown Jeep and UAG "actually knew, or in the exercise of ordinary care should have known, . . . that the Jeep they were supplying was defective." Rubin alleged that when the vehicle was sold, defendants "were aware that Defendant Chrysler would recall 1993 through 1998 model year Jeep Grand Cherokees for a safety defect concerning the Jeep's floor shifter, which allowed inadvertent shifts into 'Reverse' when the vehicle was seemingly in the 'Park' position. Each of the Defendants also knew that the 1999 model Jeep was subject to inadvertent shift to reverse." (Docket Entry No. 7, Ex. 1, p. 4).

Rubin alleged that Crown Jeep and UAG were involved in the "actual design" of the 1999 Jeep by providing Chrysler with "input, information regarding consumer preferences, information concerning customers' complaints, and information concerning product deficiencies." (*Id.*). Rubin also alleged that when the vehicle was sold in July 1999, Crown Jeep and UAG were aware that Chrysler had issued a warning about the unintended rearward movement of 1999 through 2004 model year Jeep Grand Cherokees when the shift lever was apparently in the "park" position, making them aware of this defect in the vehicle sold to Roberts, which injured Rubin. (*Id.*). Although Rubin alleged that Crown Jeep had performed routine service on the 1999 Jeep, including on the gear system, she alleged that the vehicle was defectively designed and manufactured when sold; she did not allege that the

dealership's servicing altered the gear shift or transmission so as to contribute to the accident. (Docket Entry No. 16, pp. 7-8).

Based on these factual allegations, Rubin asserted causes of action for strict liability based on the defective design and /or manufacture of the vehicle's floor gear shift lever that allowed inadvertent shifts into reverse when the vehicle seemed to be in the "park" position. Rubin asserted that the defendants failed to warn drivers, owners, or passengers of the defect. Rubin asserted defective marketing in that the "advertising and marketing campaigns and programs" undertaken by Chrysler, Crown Jeep, and UAG misled consumers as to the safety features of the Jeep and failed to warn consumers of the dangerous condition of the Jeep. Finally, Rubin asserted that defendants negligently designed, manufactured, and marketed the Jeep.  (Docket Entry No. 7, Ex. 1, pp. 4-5).

On October 15, 2004, Chrysler filed a notice of removal on the basis of improper joinder of the in-state defendants.  Chrysler argues that the recent amendments to Chapter 82 of the Texas Civil Practices and Remedies Code ("TCPRC") preclude recovery against the in-state defendants.  Section 82.003 protects nonmanufacturing sellers from liability for injuries caused by a defective product unless one of the specified exceptions applies.[1]

Chapter 82 applies in a "products liability action," defined as:

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability,

---

[1]  Section 82.003 was added by Texas House Bill 4 and applies to any action filed on or after July 1, 2003.  Tex. H.B. 4, 78th Leg., R.S. (2003).

negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.001.  In 2003, the Legislature added section 82.003, which limits the ability of a plaintiff to recover against a nonmanufacturing seller in a products liability action.  Section 82.003 states:

(a)  A seller that distributes a product, without participating in its manufacture, is not liable for harm caused to the claimant by that product unless the claimant proves:

(1) that the seller participated in the design of the product;

(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;

(4) that:

(A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;

(B) the warning or instruction was inadequate; and

(C) the claimant's harm resulted from the inadequacy of the warning or instruction;

(5) that:

(A) the seller made an express factual representation about an aspect of the product;

(B) the representation was incorrect;

(C) the claimant relied on the representation in obtaining or using the product; and

(D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

(6) that:

(A) the seller actually knew of a defect to the product at the time the seller supplied the product; and

(B) the claimant's harm resulted from the defect; or

(7) that the manufacturer of the product is:

(A) insolvent; or

(B) not subject to the jurisdiction of the court.

(b)  This section does not apply to a manufacturer or seller whose liability in a products liability action is governed by Chapter 2301, Occupations Code.  In the event of a conflict, Chapter 2301, Occupations Code, prevails over this section.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003.

There are few cases decided under section 82.003.  The few federal court cases involving cases removed under the statute have remanded based on Deceptive Trade Practices Act claims asserted in the plaintiff's state court petition.  *See Alonso,* 356 F. Supp.2d at 761 (concluding that sellers of allegedly defective product could not be liable under section 82.003 but remanding on the basis of a DTPA claim); *Skinner v. Cooper Tire & Rubber Co.,* 2004 WL 1171201, *2 n.3 (N.D. Tex. 2004)(remanding on basis of DTPA claim and noting that defendant did not argue that a DTPA claim is unavailable); *Brewer v. Porsche Cars North America, Inc.,* 2005 WL 292417, *2 (N.D. Tex. 2005)(remanding on basis of plaintiff's DTPA claim that alleged seller failed to disclosure information about the

product which was known at the time of the sale); *see also Cooper v. Zimmer Holdings, Inc.,* 320 F. Supp.2d 1154, 1163 (D. Kan. 2004)(remanding on basis of deceptive trade practice claim despite broad statutory definition of product liability claim).

No discovery had been conducted when Chrysler removed.  Chrysler attached to its notice of removal an affidavit of Crown Jeep's former president, Rocky L. McCullough.  In the affidavit, McCullough explained that none of the exceptions to section 82.003 apply. In support of remand, Rubin submitted the affidavit of Roberts.  In her affidavit, Roberts stated that on three different occasions, once at the time of the sale of the Jeep in July 1999 and twice following routine service inspections, Crown Jeep employees made representations about the transmission.  (Docket Entry No. 7, Ex. 4, ¶ 6).   On November 3, 2000 and January 8, 2002, "Crown Jeep represented . . . that it had actually performed a proper transmission service and diagnostic inspection of the Jeep, and that the transmission was working properly."  (*Id.* ¶¶ 7-8).

Rubin asserted that remand was proper under section 82.003(a) because she pleaded that the in-state defendants had actual knowledge of the transmission defect at the time of sale to Roberts; that the in-state defendants participated in the design of the product; and that the in-state defendants misrepresented the safety of the allegedly defective gear shift.  Rubin also argued that remand was proper because she had pleaded an independent negligent misrepresentation claim for "false advertising" under the Texas Occupations Code, a claim explicitly excluded from the seller liability statute in section 82.003(b).  (Docket Entry No. 7).

Defendants responded that Rubin omitted specific undisputed facts and misstated other facts that undermine the only basis alleged in her petition to show that the in-state defendants had actual knowledge of the defect; that the allegations in the petition fail to provide a basis for holding Crown Jeep and UAG liable for participating in the design of the vehicle; and that the allegations and evidence as to representations about the transmission do not fall within any exception to the Texas state law protecting nonmanufacturing sellers from liability.  (Docket Entry No. 10).

On February 17, 2005, this court held a hearing on Rubin's motion to remand.  In the hearing, Chrysler argued that although Rubin had alleged that the in-state defendants had actual knowledge of a gear shift defect at the time of the sale, she had omitted and misstated specific facts.  Rubin alleged actual knowledge based on a recall that applied to the 1993 to 1998 Jeep Grand Cherokees ("the BO2 Recall") and a "warning" letter sent to owners of 1999 to 2004 year models.  According to Chrysler, the BO2 Recall did not issue until 2002, three years after the sale of the Jeep to Roberts.  Chrysler asserted that the 1999 Jeep was never included in a gear shift recall and that the "warning" letter was a safety reminder that did not issue until 2003, long after the sale of the Jeep to Roberts and, indeed, after the accident.  Rubin did not include the issuance dates for either the BO2 Recall or the letter. She did not allege any other factual basis for the in-state defendants' knowledge of a "park to reverse" design or manufacturing defect in the 1999 Jeep.  In the state court petition, Rubin alleged that the BO2 Recall applied to the 1993 to 1998 year models, but in her motion to remand, Rubin included the 1999 Jeep as among the year models included in the recall.

Chrysler urged this court to conduct a summary inquiry under *Smallwood*, 385 F.3d 568. At the time of the hearing, the parties did not know whether Chrysler had informed the dealerships about the 1993 to 1998 BO2 Recall or the 1999 to 2004 letter before it released the information to consumers and were unsure about the exact dates either communication issued. (Docket Entry No. 16).

This court allowed limited discovery into discrete factual areas material to determining jurisdiction: the date of the BO2 Recall; the date of the warning letter; and any information the in-state defendants had received about an "inadvertent reverse" risk in the 1999 Jeep. The jurisdictional discovery shows that before July 1999, Chrysler did not send Crown Jeep any notices or information about inadvertent gear shift issues in Jeep Grand Cherokees. In September 2002, Chrysler issued the BO2 Recall for 1993 to1998 Jeep Grand Cherokees. The 1999 Jeep was not included. In February 2003, Chrysler issued the letter to owners titled "Recommendations For Avoiding Unintended Movement of Your 1999 to 2004 Model Year Jeep Grand Cherokee" ("Unintended Movement Letter"). In February 2003, Chrysler informed the dealers that the Unintended Movement Letter had been sent to all known owners and instructed the dealers to place a copy of the letter in 1999 to 2004 vehicles in their inventory. (Docket Entry No. 17, Exs. 1-4).

Rubin has alleged three grounds for holding the in-state seller defendants liable under Texas law for the park-to-reverse defect she asserts caused the accident: the in-state defendants had actual knowledge of the defect; the in-state defendants participated in

designing the vehicle; and the in-state defendants negligently misrepresented the proper operation of the transmission.  Each ground is examined below.

## IV.    The In-State Defendants' Actual Knowledge of the Defect

A plaintiff may recover against a nonmanufacturing seller for injuries resulting from a defective product if that seller actually knew of a defect to the product when the seller supplied the product and the plaintiff's harm resulted from the defect. TEX. CIV. PRAC. & REM. CODE. ANN. § 82.003(a)(6); *see Reynolds v. Ford Motor Co.*, 2004 WL 2870079 (N.D. Tex. Dec.13, 2004) (remanding products liability suit for lack of diversity because the petition alleged that the in-state seller had actual knowledge of a product defect at the time of the sale).  Rubin pleaded that the in-state defendants had actual knowledge of the transmission defect in the 1999 Jeep when it was sold to Roberts on July 27, 1999.  Although the pleading states one of the exceptions to section 82.003, the only basis Rubin alleged for actual knowledge on the part of the in-state defendants was based on the communications sent by the designer and manufacturer, Chrysler.  The jurisdictional discovery reveals undisputed facts that were omitted from or misstated in the petition that preclude a finding of actual knowledge on the only basis Rubin alleged.

Rubin alleged that in July 1999, the dealership had actual knowledge of the defect in the 1999 Jeep gear shift design on the basis of the BO2 Recall that applied to gear shift levers in the 1993 to 1998 Jeep Grand Cherokees and the Unintended Movement Letter that was directed to the 1999 to 2004 Jeep Grand Cherokees.  The undisputed facts show that the BO2 Recall issued in 2002, three years after the sale of the Jeep at issue to Roberts, and the

Unintended Movement Letter issued in 2003, almost six months after the date of Rubin's accident.[2] In response, Rubin argues that because the BO2 Recall had not issued at the time of the sale, Crown Jeep could not have ruled out the possibility that the 1999 Jeep might be included in a recall that might have been "brewing" as early as July 1999. (Docket Entry No. 22, p. 7). Under the Texas statute, however, liability cannot be based on an allegation that a seller *should have known* of a defect in a product. *See Reynolds,* 2004 WL 2870079 *3 (N.D. Tex.)("The language of section 82.003 clearly requires actual knowledge of the defect on the part of the seller. . . . Section 82.003 makes no reference to what a seller should have known or foreseen.").

In February 2003, Chrysler notified dealers about the Unintended Movement Letter. Chrysler stated in the dealer notice that it had sent the letter to all known owners of 1999 to 2004 Jeep Grand Cherokees and instructed the dealers to place a copy of the letter in the owner's manual or the glove box of all 1999 to 2004 year models in their inventories. Chrysler provided a copy of the letter and described the subject of the letter as follows:

> Unintended movement of a vehicle could occur if the automatic transmission shift lever is not engaged in the "Park" position. This could injure those in and/or near the vehicle. To help ensure continued safe vehicle operation, [Chrysler] is informing owners of some recommended steps to confirm the safe and proper engagement of the "Park" position on the vehicle's automatic transmission.

---

[2] Under the National Traffic and Motor Vehicle Safety Act, the manufacturer of a vehicle has a duty to notify dealers and purchases of a safety defect and remedy the defect without charge. *See* 49 U.S.C.A. § 30118.

(Docket Entry No. 17, Ex. 4).  Although Rubin alleged that this letter showed that the in-state dealership defendant had actual knowledge of the defect in the gear shift design before the vehicle was sold, the record is undisputed that Chrysler did not send this letter to the dealerships until well after the sale of the vehicle and after the accident.

In addition to the BO2 Recall Notice and the Unintended Movement Letter, this court instructed the defendants to provide Rubin with all internal memos, letters, and complaints that Crown Jeep sent or received concerning an inadvertent gear shift problem in the Jeep Grand Cherokee before July 1999.  The jurisdictional discovery shows that Crown Jeep did not receive information about a gear shift defect or complaints from consumers about inadvertent gear shifts in the Jeep Grand Cherokees. (Docket Entry No. 17, Ex. 3).  Based on Rubin's pleadings and the limited jurisdictional discovery, no reasonable factfinder could conclude that the in-state defendants had actual knowledge about a gear shift defect in the 1999 Jeep Grand Cherokees when the Jeep was sold to Roberts in July 1999.

**V.      Participation in the Design of the 1999 Jeep Grand Cherokee**

A seller may be liable in a products liability action if the "seller participated in the design of the product."  TEX. CIV. PRAC. & REM. CODE. ANN.  § 82.003(a)(1).  Rubin alleged that the in-state defendants participated in the design of the Jeep by "provid[ing] [Chrysler] with input, information regarding customer preferences, information concerning customers' complaints, and information concerning product deficiencies." (Docket Entry No. 7, Ex. 1 p. 4).  Rubin did not allege that Crown Jeep or UAG had substantive involvement in the actual design of the gear shift or that Chrysler relied on the "input" or "information"

allegedly provided in making decisions about the design of the gear shift or any other aspect of the 1999 Jeep.

The allegations in Rubin's petition do not present any basis for finding the in-state dealership defendants liable for participating in the design of the 1999 Jeep.  Texas law does not provide a reasonable basis for holding a dealership liable for a product's defective design because the dealership provided the manufacturer information about customer complaints and preferences.  Under Rubin's argument, any consumer who writes to Chrysler to criticize a particular design feature, or responds to a survey soliciting consumer reaction to designs, participates in a future product's design.  Such an expansive approach to "participating" in a product's design, makes the seller of a product liable for design defects without regard to whether that seller had any control over, direct involvement in, or knowledge about the design.  Texas law does not support holding persons or entities with such indirect connection to the design process liable for design defects.  *See Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 616 (Tex.1996) (tire manufacturer's introduction of an intangible concept that was later used by designers and manufacturers was insufficient to trigger liability in a products liability action arising out of products that incorporated the design concept); *Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 683 (Tex.2004)(holding that a component-part manufacturer that does not participate "in the integration of the component into the final product" is not liable for defects in the final product).[3]  Rubin cites no authority

---

[3]   In *Bostrom,* the Texas Supreme Court noted its adoption of section 5(b)(1) of the *Restatement (Third) of Torts: Products Liability,* to determine the design liability of a manufacturer who is involved in the design of a particular component, but not the product as a whole.  Under the

that extends liability for defective design to persons or entities based on the indirect and attenuated involvement of reporting information about products already on the market.  As a matter of law, the allegations in the petition do not provide a reasonable basis to hold Crown Jeep and UAG liable for participating in the design of the 1999 Jeep sold to Roberts.[4]

## VI.   Alleged Representations About the Transmission

A seller may be liable for an "express factual representation about an aspect of the product" if the representation was "incorrect; the claimant relied on the representation in obtaining or using the product; and if the aspect of the product had been as represented the claimant would not have been harmed by the product or would not have suffered the same degree of harm."   TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a)(5).   Defendants emphasize that Roberts, not Rubin, purchased the Jeep from the in-state defendants.  As Rubin points out, the statute does not require that the representation be made directly to the injured claimant.  However, Rubin's argument does not provide a basis for remand because she did not allege either a factual or legal basis to support this theory of recovery in her state court petition.

---

*Restatement,* such a manufacturer is liable as a designer of the product only when the manufacturer "substantially participates in the integration of the component into the design of the product." *Restatement (Third) of Torts: Products Liability* § 5(b)(1). "[P]roviding mechanical or technical services or advice concerning a component part does not, by itself, constitute substantial participation. . . ." *See Restatement (Third) of Torts: Products Liability* § 5 Cmt. e.

[4]  In addition, the jurisdictional discovery shows that prior to the sale of the 1999 Jeep to Roberts, Crown Jeep did not provide input or information to Chrysler about "consumer preferences," "customers' complaints," or "product deficiencies" that relate to the design of the transmission or gear shift in the 1999 Jeep Grand Cherokee.  (Docket Entry No. 17, Exs. 1-3).

Under section 82.003 (a)(5), the claimant must rely on the incorrect representation in obtaining or using the product and the seller's representations must have increased the risk of harm caused by the defective product. Rubin did not allege that she or Roberts relied on any express factual representation about the transmission made by Crown Jeep employees when Roberts purchased the Jeep or after she took it in for routine service, that contributed to Rubin's injury. In the petition, Rubin alleged that in advertising and marketing campaigns and programs, "defendants" misled consumers about the safety features of the Jeeps and failed to warn about "dangerous conditions." In the petition, Rubin alleged that "[a]t the time of sale to Maria Roberts, [the in-state defendants] were aware of serious safety problems with the floor shifter," (Docket Entry No. 7, Ex. 1, p. 4); "[e]ach of the defendants [knew] that the 1999 model Jeep Cherokee was subject to inadvertent shift to reverse. None of [the] defendants ever warned Maria Roberts or [Rubin] of this safety defect," (*Id.*, p. 4); "[e]ach of these defendants had actual awareness of this defect, had actual awareness of the [sic] Maria Robert's address, had a duty to ensure that Maria Roberts was made aware of this defect, and failed to take reasonable steps to warn Maria Roberts of this defect. . . ." (*Id.,* p. 4). Rubin did not allege that Crown Jeep made any specific express factual representations about the gear shift lever or that she relied on such representations. Such allegations are set out only in Roberts's post-removal affidavit filed in support of Rubin's motion to remand. In her affidavit, Roberts states that she relied on "representations" that the transmission was working properly. (Docket Entry No. 7, Ex. 4, ¶¶ 6-8). "Post-removal filings may not be considered . . . when or to the extent that they present new causes of action or theories not

raised in the controlling petition filed in state court."  *Griggs,* 181 F.3d at 700; *Cavallini v. State Farm Auto Mutual Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (plaintiffs "cannot rely on their affidavits" to establish a claim "against the nondiverse defendant under a legal theory not alleged in the state court complaint.").

Section 82.003(a)(5) permits recovery against a seller of a defectively designed or manufactured product if that seller made an "express factual representation about an aspect of the product" that was incorrect and independently contributed to the harm caused by the defective product.  In her petition, Rubin made general "failure to warn" allegations. Because Rubin's state court petition fails to allege the specific actionable conduct required by section 82.003(a)(5), this section does not provide a basis for remand.

## VII.    The Negligence Claims

Rubin argues that remand is proper on the basis of the negligent repair and negligent misrepresentation claims she asserted in her state court petition.  Rubin argues that Crown Jeep may be independently liable under Texas law for negligently servicing the Jeep and negligently representing that the Jeep was safe. (Docket Entry No. 11, p.8).

In her state court petition, Rubin alleged that the vehicle was defectively designed, manufactured, and marketed when sold, specifically referring to marketing and advertising campaigns and programs and alleging that defendants failed to warn of the allegedly dangerous gear shift lever.  During the jurisdictional discovery, Crown Jeep submitted a "New Vehicle Preparation" report.  Rubin points to this report as evidence that Crown Jeep participated in manufacturing the vehicle or as evidence that it negligently serviced the Jeep

after it was sold. (Docket Entry No. 22, p. 8; Ex. 3).  Rubin's state court petition is limited to a strict liability and negligent design, manufacture, and marketing theory, based on allegations that the gear shift lever in the 1999 Jeep was defective at the time the vehicle was sold to Roberts.  "[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs*, 181 F.3d at 701.  Rubin did not allege that the in-state defendants "manufactured" the 1999 Jeep or that any of the service performed by Crown Jeep altered the vehicle so as to cause the accident.[5]  Rather, Rubin alleged only that the routine service performed by the in-state defendants provided them an unused opportunity to warn about the

---

[5]  During the February 17, 2005 hearing on the motion to remand, Rubin acknowledged that her state court petition did not include negligent repair or service allegations.

> The Court:  Have you alleged that the dealership's servicing contributed to the accident?
>
> A: I've alleged that they serviced the vehicle and through their servicing, they should have warned her.  They had a duty to warn her of the problem.
>
> The Court: Have you alleged that the servicing work done on the vehicle in any way contributed to cause the accident?
>
> A:  I have not made that specific allegation.
>
> The Court:  Is the dealership's knowledge the primary basis on which assert remand in light of 82.003?
>
> A:  Their knowledge and their participation [in design and marketing].

(Docket Entry No. 16, pp. 7-8).  Rubin state's court petition states in part as follows:

> The Jeep Grand Cherokee was designed and manufactured by CHRYSLER. It was marketed by CHRYSLER, CROWN JEEP, and UAG, and was placed into the stream of commerce by CHRYSLER, CROWN JEEP, and UAG.  Defendants CROWN JEEP and UAG marketed and serviced the vehicle.

(Docket Entry No. 7, Ex 1, p. 3).

propensity of the gear shift to appear to be in "park" when it was in "reverse."  Rubin did not allege facts or a legal theory that would permit the in-state defendants to be liable under state law for negligently performing service work that altered the design on manufacture of the gear shift lever and contributed to cause the accident.

Rubin's argument that Crown Jeep participated in the manufacture of the Jeep by completing the "New Vehicle Preparation" ("NVP") inspection does not provide a reasonable basis for liability under Texas law.  Chrysler instructs dealers to complete the NVP inspection before selling one of its new vehicles and provides a preprinted NVP check-list.  The inspection form states that "[c]onditions which can be corrected by the minor adjustments specified below are considered part of normal new vehicle preparation.  Items that require correction beyond the minor adjustments specified are eligible for warranty reimbursement." (Docket Entry No. 17, Ex. 3).  Under the heading "Transmission / Transfer Case Performance," the form lists four inspections for vehicles with automatic transmissions. Dealers are to check the operation of a gear shift lever to ensure that it "operates easily"; "shifts smoothly"; and "upshifts and downshifts properly"; and to ensure that the "park lock holds [the] vehicle." (*Id.*).  The record shows that Crown Jeep performed these inspections on the 1999 Jeep sold to Roberts.

Checking the operation of a fully assembled product and making "minor adjustments" does not make Crown Jeep a "manufacturer" for the purpose of a product liability action under Texas law.  A manufacturer is "a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler" of a product.  TEX. CIV. PRAC.

& REM. CODE ANN. § 82.001; *cf* §§ 82.003(2-3) (a seller may be liable for a defective product if the seller "altered or modified the product" or the seller "installed the product, or had the product installed, on another product").   Rubin did not allege in her state court petition that the in-state dealership defendants altered or modified any part of the Jeep or otherwise participated in the manufacture of the 1999 Jeep.   Rubin's reliance on the NVP inspection does not provide a reasonable basis for recovery against Crown Jeep and UAG as "manufacturers."

Rubin also argues that she has alleged facts to support a negligence claim for the "use of false, deceptive, or misleading advertising" under the Texas Occupations Code, § 2301.351.   Section 82.003(b) states:

> This section does not apply to a manufacturer or seller whose liability in a products liability action is governed by Chapter 2301, Occupations Code.  In the event of a conflict, Chapter 2301, Occupations Code, prevails over this section.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003.   Because no Texas court has addressed the viability of negligent misrepresentation claims against a seller in a products liability action since section 82.003 was enacted, Rubin contends that any ambiguity in Texas law must be resolved in her favor.   Despite the recent enactment of section 82.003, Rubin's argument that the subsection (b) should be construed to allow a reasonable basis of recovery on negligent misrepresentation claims against the nonmanufacturing seller of the Jeep is unpersuasive. Under Rubin's proposed statutory construction, section 82.003(b) would operate as a general exception to 82.003(a) and create an negligent misrepresentation cause of action under the Texas Occupations Code.   Construing section 82.003(b)'s reference to the Texas

Occupations Code as a "mechanism for negligence claims" would be inconsistent with the statute, which applies to all claims based on a defective product regardless of the legal theory asserted. The statute defines "products liability action" specifically to include negligence and misrepresentation theories. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.001 ("*any action* against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based is based on [strict liability, negligence, misrepresentation, breach of warranty] or *any other theory or combination of theories*")(emphasis added); *see also Alonso ex. rel. Estate of Cagle v. Maytag Corp.,* 356 F. Supp.2d at 761 (defective product claims based on strict liability and negligence are governed by Chapter 82). Rubin's proposed construction also eviscerates section 82.003(a). Rubin's reliance on section 82.003(b) concedes that section 82.003(a) does not allow a plaintiff in a products liability suit to recover against a seller under a negligent misrepresentation theory. Negligent misrepresentation claims do not require actual knowledge of the falsity. Section 82.003(a)(6) is an exception that applies if the seller has actual knowledge of a defect when the product is sold. Section 82.003(a)(5) is an exception from the protection for nonmanufacturing sellers that applies if a plaintiff is harmed because of reliance on a seller's incorrect statements about an aspect of the product. TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a). The entire rule would be swallowed by allowing liability for negligent misrepresentations.

Section 82.003(b) does not refer to negligent misrepresentation claims and Chapter 2301 of the Texas Occupations Code, itself does not create such a claim. Under the Code,

the Texas Motor Vehicle Board has the authority to regulate and license manufactures, distributors, and dealers and to enforce warranty obligations in the sale of new cars.  TEX. OCC. CODE ANN. § 2301.001; *see generally Internat'l Truck and Engine Corp. v. Bray,* 372 F.3d 717, 722 (5th Cir.2004);  *BMW of N. Am., LLC v. Motor Vehicle Bd.*, 115 S.W.3d 722, 724-25 (Tex. App.–Austin 2003, pet. denied).  The Board has exclusive jurisdiction over matters governed by the Code.  *See* TEX. OCC. CODE ANN. § 2301.151; *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212 (Tex. 2002); *Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 436 (Tex. App.– Houston [1st Dist.] 2003, no pet.).[6]  The Texas Occupations Code governs a "products liability action" to the extent that a plaintiff seeks to enforce a seller's warranty obligations.  The exception in section 82.003(b) recognizes that an owner of a defective vehicle has a claim for statutory damages for defects covered by an express warranty agreement.  Under the Code, the owner of a vehicle is entitled to a replacement vehicle or a refund if the manufacturer or responsible seller is unable to conform the vehicle to an express warranty by repairing or correcting a defect or condition that creates a "serious safety hazard" or "substantially impairs" the use or market value of the vehicle. *See* TEX. OCC. CODE ANN. §§ 2301.604; 2301.461; 2301.607

---

[6]  Section 2301.151 of the Code states that:

> The board has the exclusive, original jurisdiction to regulate those aspects of the distribution, sale, and leasing of motor vehicles as governed by this Act and to do all things, whether specifically designated in this Act or implied herein, or necessary or convenient to the exercise of this power and jurisdiction, including the original jurisdiction to determine questions of its own jurisdiction.

TEX. OCC.CODE ANN. § 2301.151.

(discussing administrative exhaustion requirement and a seller's opportunity to cure the defect).  The Code does not provide a tort cause of action for a plaintiff injured by a motor vehicle.  *See Sportscoach Corp. of Am., Inc. v. Eastex Camper Sales, Inc.*, 31 S.W.3d 730, 734-35 (Tex. App.–Austin 2000, no pet.) (noting that the Motor Vehicle Board the power to assess civil penalties but not to award damages to private parties).

Rubin correctly asserts that the Code prohibits false, deceptive, or misleading advertising by vehicle dealers. TEX. OCC. CODE ANN. § 2301.351 (a dealer may not "(1) violate a board rule; (2) aid or abet a person who violates this chapter; or (3) use false, deceptive, or misleading advertising.").   A consumer who is injured by a dealer or manufacturer's false or deceptive advertising, may either complain to the Board or sue under the Texas Deceptive Trade and Practices Act ("DTPA").[7] *See* TEX. OCC. CODE ANN. §§ 2301.204(a-d); 2301.801; TEX. BUS. & COM. CODE § 17.50(a) (providing DTPA claim for economic damages and mental anguish damages for "false, misleading, or deceptive acts or practices").  Rubin has not alleged a DTPA claim.  Her product liability claims are not governed by Chapter 2301 of the Texas Occupations Code.

---

[7] Section 2301.801 states:

> (a) Notwithstanding any other law, including [the DTPA], in addition to the other remedies provided by this subchapter, a person may institute an action under [the DTPA] . . . if the person (1) has sustained damages as a result of a violation of Sections 2301.351- 2301.354 or Section 2301.357.

> (b) In an action brought under this section, and in the interest of judicial economy and efficiency, a judgment entered in the action must give deference to the findings of fact and conclusions of law of the board contained in any final order that is the basis of the action.

TEX. OCC. CODE ANN. § 2301.801.

This court concludes that on the facts and causes of action alleged in Rubin's state court petition, the removing defendants have shown that there is no reasonable basis of recovery against the in-state defendants.

**IV.    Conclusion**

This court denies Rubin's motion to remand.

SIGNED on May 20, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge